On the Merits.
Mrs. Nellie Gorman Mix and Mrs. Susie Gorman Breitkreutz and Eugene Gorman, Jr., brought this suit against Mrs. Octavia Braud *416 Collongues, individually and as administratrix of the succession of her brother, Sidney Achee Braud, deceased, averring that they (the plaintiffs) were, respectively, the sisters and brother of the half blood of Mrs. Collongues and her deceased brother, and, as such, entitled to the three-eighths of liis estate. Mrs. Collongues is the only surviving daughter, and Sidney Achee Braud was the only son, of the marriage of Lavinia Achee to Melchoir Braud in 1882. The plaintiffs are, respectively, the daughters and son of Lavinia Achee, and claim that she was divorced from Melchoir Braud and afterwards married to Eugene F. Gorman, and that they (the plaintiffs) are the issue of that marriage. The defendant Mrs. Collongues denies that her mother was ever married to Eugene F. Gorman or divorced from Melchoir Braud. The district court decided in favor of the plaintiffs, and the defendant Mrs. Collongues has appealed from the decision.
The plaintiffs were not able to produce a record of the marriage of their mother to Eugene F. Gorman, or of her divorce from Melchoir Braud, but the proof of the marriage, by reputation, and by its recognition in the family and in the community generally, is abundant. Eugene F. Gorman was born in Ireland, on the 12th of June, 1839, and came to this country when only nine years of age. He entered the theatrical profession at an early age, and traveled extensively, appearing in nearly all of the large cities in this country and in Canada. He served in the Confederate Army, and was injured in the First Manassas engagement. His first wife, Miss Susie Starr, was also of the theatrical profession. She and two children of the marriage died many years ago — before the supposed second marriage of Gorman. He died in New Orleans on the 8th of July, 1907. His reputation in this city was that of a very honorable man. He and the mother of the parties to this suit lived together here for many years, as husband and wife; rearing their children properly, and were free from any suspicion or- thought of their being unmarried. Considering how extensively he traveled' over the' country at the time of the supposed second marriage, there is no telling where the marriage ceremony may have been performed.
 There would be no doubt about the proof of the marriage of Lavinia Achee to Eugene F. Gorman, or the validity of the marriage, except for the fact that there is no proof by record of a divorce of Lavinia Achee from Melchoir Braud. She was married to Braud on the 1st of February, 1882, at Labadieville, in Assumption parish, La. He died in New Orleans on the 2d of June, 1921, at the age of seventy, and was theretofore residing here, on South Claiborne street. Mrs. Lavinia Gorman died in this city on the 30th of March, 1895, at the age of forty-two. The record discloses that Melchoir Braud regarded the relationship between Eugene F. Gorman and Braud’s former wife as that of husband and wife, for he lived here in the same state, and during part of the time in the same city, and visited them, even after their three children were born. In the light of these circumstances, it is not unreasonable to presume that Lavinia Achee was divorced from Melchoir Braud. In fact, it would be very unreasonable to assume that Braud would visit his wife and the man whom she was living with in concubinage, and the children of the illicit cohabitation, if in fact she was Braud’s wife and was living in concubinage with the other man. The presumption in that respect is very much the same, though not as strong, as it would be if the son and daughters of Eugene F. Gorman could produce a record of his marriage to their moth *418 er, even though the marriage was contracted during the lifetime of her former husband. But the proof of the second marriage is so convincing in this ease that the presumption of innocence of the contracting parties, in our opinion, ought to prevail over any presumption to the contrary arising from the fact that the woman’s first husband was living when she contracted the second marriage.
Counsel for the appellees argue, alternatively, that, if their mother was not divorced from Braud, it must be presumed that the second marriage was contracted'in good faith •on the part of Gorman; and counsel invokes article 117 of the Civil Code, which declares that a null marriage has the effect of a valid marriage, as to the parties and their heirs, if the contracting parties were in good faith; and counsel invokes also article 118, which declares that, if only one of the parties to a null marriage was in good faith, the marriage has its civil effects only in his or her favor “and in favor of the children born from the marriage.” The circumstances of this case, however, do not create the presumption merely that Eugene E. Gorman believed, when he married Lavinia Achee, that she was not already married; the conclusion from all of the circumstances is that she was divorced from her first husband.
A serious proposition which the appellant must meet in this case is that, if the appellees are not deemed to be the legitimate children of Eugene E. Gorman, they are presumed by law to be the legitimate, children of Melchoir Braud, and hence the sisters and brother, respectively, of the appellant and of her deceased brother, Sidney Achee Braud. If Lavinia Achee was not divorced from the father of the appellees when they were conceived, they are presumed by law to be his legitimate children. Article 184 of the Civil Code declares that the law considers the husband of the mother as the father of all children conceived during the marriage. Article 188 declares that, although cohabitation between a husband and wife is not presumed to have taken place if she has conceived when there was a decree of separation from bed and board, the cohabitation is presumed to have taken place if she has conceived during a voluntary separation. And article 191 makes the presumption of paternity absolute when the husband has failed to bring a suit in disavowal of the paternity within one month, if he was present, or within two months after his return, if he was absent from the place when the child was born. Melchoir Braud knew of the birth of these children, and visited them and their mother, and never disavowed their paternity; the reason being, manifestly, that the children were born of the second marriage of their mother. If the appellees had proceeded successfully upon the contention which the appellant makes, they would be entitled to three-fourths of the estate of their deceased brother. They are claiming only three-eighths of the estate, on the true and correct assertion that they are the children of the second marriage of their mother.
The judgment is affirmed.